DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Keith Bingham, DVM, appeals from the judgment entry of the Summit County Court of Common Pleas which affirmed the decision of the Ohio Veterinary Medical Licensing Board ("Board") to suspend Dr. Bingham's veterinary licence and to impose a $1,000 fine. We affirm.
 I.
Dr. Bingham is a veterinarian who has been engaged in a small animal practice since he was first licensed in Ohio in 1977. This case is based on Dr. Bingham's treatment of an eleven-year old miniature schnauzer named Mandy, from July 1993 through October 1993. Dr. Bingham administered tests and treated Mandy at numerous office visits during this period of time, and the dog was admitted to Dr. Bingham's animal hospital from August 4 through August 9, and again from August 16 through August 21.
On October 15, the dog's owner, Lyn Covey, took Mandy to Dr. Sharon Hoffman for a second opinion. Dr. Hoffman, who has been practicing veterinary medicine since 1984, reviewed Mandy's past medical history and records and performed an exam. Dr. Hoffman discovered that Mandy was not suffering from liver disease, as Dr. Bingham had diagnosed, but that the dog had several serious undiagnosed problems, including diabetes and hyperlipidemia. The schnauzer breed has a predisposition to hyperlipidemia, which was all the more reason why it was determined that Dr. Bingham should have diagnosed and properly treated this disease. Dr. Hoffman found that Dr. Bingham's records were incomplete and illegible and that his records and lab work did not support a diagnosis of liver disease. Moreover, the medication and diet that Dr. Bingham had prescribed for Mandy was contraindicated for a dog with hyperlipidemia and had caused the levels of cholesterol and triglycerides to become worse in each subsequent lab test. The dog was eventually euthanized by Dr. Hoffman.
Dr. Bingham was charged with gross incompetence in diagnosing and treating Mandy, including misdiagnosis of a liver disease and administration of the wrong drugs and diet to Mandy. In addition, he was charged with failing to maintain adequate medical records for his treatment of this dog. Dr. Bingham allegedly violated R.C. 4741.22(A), (R), and (W) and Ohio Administrative Code4741-1-03(C)(1).[1]
An administrative hearing was held on July 12, 1996, in Columbus, Ohio. The hearing officer found that Dr. Bingham had violated the aforementioned statutes and administrative rule and recommended that the Board suspend Dr. Bingham's licence to practice veterinary medicine for thirty days and assess a $250 civil penalty, plus costs. On December 3, 1996, the Board issued a Finding and Order ("Order"), in which it adopted the hearing officer's report and recommendation in part. The Board found that Dr. Bingham had violated the statutes and administrative rule as charged and ordered that Dr. Bingham's license to practice veterinary medicine be suspended for thirty days. Because this was Dr. Bingham's second violation, the Board assessed a $1,000 civil penalty, and costs of $1,682.70 associated with the administrative hearing.[2]
Dr. Bingham appealed this administrative decision to the court of common pleas pursuant to R.C. 119.12. After a complete review of the record, the trial court ruled:
 While the Court cannot find any evidence of violation of Section 4741.22(A) of the Ohio Revised Code regarding ". . . proper humane, sanitary and hygienic methods . . ." there is sufficient other evidence of violations of 4741.22(R) and (W) and Ohio Administrative Code 4741-1-03(C)(1) which evidence is substantial, reliable and probative, adequate for those issues, and this Court hereby affirms the decision of the Ohio Veterinary Medical Licensing Board.
 II.
Dr. Bingham now brings his appeal to this Court, raising five assignment of error:
 I. The lower court committed reversible error because the Finding and Order of the Ohio Veterinary Medical Licensing Board are not supported by reliable, probative, and substantial evidence and is not in accordance with law.
 II. The lower court committed reversible error because the Finding and Order of the Ohio Veterinary Medical Licensing Board violates Dr. Bingham's due process rights.
 III. The lower court committed reversible error because the Finding and Order of the Ohio Veterinary Medical Licensing Board violates Ohio Revised Code § 121.22.
 IV. The lower court committed reversible error because the Finding and Order of the Ohio Veterinary Medical Licensing Board fails to meet the appropriate standard of proof.
 V. The lower court committed reversible error because the Finding and Order of the Ohio Veterinary Medical Licensing Board is supported by an administrative rule that is void for vagueness.
We have modified the order of the assignments of error below in order to facilitate their review.
The standard of review governing the trial court in an administrative appeal is set forth in Ohio's Administrative Procedure Act, R.C. 119.12. When an administrative agency's adjudication is appealed to the court of common pleas, that court may affirm the order of the agency if it finds, based upon consideration of the entire record and such additional evidence admitted by the court, "that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12; Lies v. Veterinary Medical Bd. (1981),2 Ohio App.3d 204, 206-07. The statute directs the common pleas court to function as an appellate court. The review of the administrative record is a hybrid review which is neither a trial de novo nor an appeal on questions of law only. Crumpler v. State Bd. of Edn.
(1991), 71 Ohio App.3d 526, 528; Lies v. Veterinary Medical Bd.,supra, at 207. A reviewing court should not substitute its judgment for that of an administrative board. Kisil v. Sandusky
(1984), 12 Ohio St.3d 30, 34
On appeal, however, this Court has a more limited role than that of the trial court in reviewing the order of the administrative agency. The function of this Court is to determine whether the trial court abused its discretion in entering its opinion. Lorain City Bd. of Edn. v. State Emp. Relations Bd.
(1988), 40 Ohio St.3d 257, 260-61. See Hawkins v. Marion Corr.Inst. (1990), 62 Ohio App.3d 863, 871. An abuse of discretion "implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." LorainCity Bd. of Edn., supra, at 261, quoting State ex rel. LovelaceMotor Freight, Inc. v. Lancaster (1986), 22 Ohio St.3d 191, 193.
 A.
In the first assignment of error, Dr. Bingham contends that the lower court committed reversible error because the Board's Order was not supported by reliable, probative, and substantial evidence and was not in accordance with law. We disagree with both assertions and shall first address the evidentiary issue.
Dr. Bingham argues that his diagnosis and treatment of many of the dog's peripheral problems concerning her teeth, ears, skin and anemia, were appropriate. He also proffers justification of the diet and medication he prescribed and explains how he used "a reasonable and scientific thought process" to arrive at his diagnosis. Dr. Bingham maintains that the explanation and evidence he presented does not support a finding of gross incompetence, failure to use reasonable care in the administration of drugs, or a failure to keep appropriate records.
Dr. Bingham testified before the Board and offered these explanations at that time. Testimony from Dr. Hoffman and the investigator's report, however, put forth considerable evidence that contradicted Dr. Bingham's claims that his actions were appropriate. According to Dr. Hoffman, neither the patient files nor the lab's blood work concur with Dr. Bingham's evaluation of liver or kidney problems. Moreover, even if these diagnoses had been correct, the investigative report found that "there is no information to substantiate Dr. Bingham's statement that the dog was placed on a `proper therapy for repair of the liver.'"
Further testimony stated that Dr. Bingham appeared to have ignored the serious problem of hypertriglyceridemia which was evident in the test results of August 5, and the urinalysis that was performed should have alerted Dr. Bingham to the possibility of the diabetes problem. Some of the diet and treatments administered by Dr. Bingham were contraindicated for a dog with Mandy's problems. The investigator felt that Dr. Bingham's failure to recognize the abnormal characteristics in several tests were "additional examples of the doctor's negligence and/or incompetency."
Dr. Bingham supposedly gave Ms. Covey a report on August 25 that indicated the dog's bloodwork had improved, when actually it had become worse and was nowhere near the normal range. The record also indicated that there were at least fourteen examples of poor or incomplete recordkeeping that demonstrated that Dr. Bingham's records did not contain information sufficient to document his treatment of Mandy. It was further noted that:
 Dr. Hoffman, when asked, indicated that this case is not one where two professional and different points of view could be equally argued. Dr. Hoffman feels that Dr. Bingham was negligent and exhibited his lack of expertise and knowledge in veterinary medicine. She further stated that this is a serious recurring problem with Dr. Bingham.
Dr. Hoffman testified at the hearing, and Dr. Bingham had the opportunity to cross examine her. Dr. Hoffman concluded that Dr. Bingham's treatment of Mandy was "grossly incompetent."
A trial court is required to give due deference to an administrative determination of conflicting testimony. Haehn v.Ohio State Racing Comm. (1992), 83 Ohio App.3d 208, 211; Crumplerv. State Bd. of Edn., 71 Ohio App.3d at 528. We do not find that the trial court abused its discretion when it found that the charges against Dr. Bingham were supported by a preponderance of substantial, reliable and probative evidence. We also do not find that the trial court erred in determining that the Board's decision was in accordance with the law. We shall further discuss the legal support for this finding as we address the remaining assignments of error.
Dr. Bingham's first assignment of error is overruled.
 B.
In his fourth assignment of error, Dr. Bingham claims that the hearing officer's recommendation which was adopted by the Board was not in accordance with the law because the hearing officer used the incorrect standard of proof. Dr. Bingham states that the correct standard should be "preponderance of the evidence" and not "reliable, substantial and probative evidence" because the "reliable, substantial and probative evidence" standard is the standard of review which a trial court must use when considering an administrative appeal. See R.C. 119.12.
We do not find any error here because the hearing examinerdid find that the violations were supported by a "preponderance" of the evidence. See, e.g., Community Concerned Citizens, Inc. v.Union Twp. Bd. of Zoning Appeals (1993), 66 Ohio St.3d 452, 456;Dudukovich v. Housing Authority (1979), 58 Ohio St.2d 202, 207. The recommendation, which was adopted by the Board, stated that "the preponderance of the reliable, substantial and probative evidence of record herein does not support his diagnosis * * *." (Emphasis added.) The fact that the hearing examiner described the evidence to be reliable, probative and substantial, does not change the fact that he did find a preponderance of the evidence supported the charges against Dr. Bingham.
The fourth assignment of error is without merit and is overruled.
 C.
Dr. Bingham's fifth assignment of error maintains that it was impossible to have violated the administrative rule because it was "void for vagueness." The veterinarian was charged, inter alia,
with violating Ohio Administrative Code 4741-1-03(C)(1). This rule states, in part, "failure to keep the facility in which the practice is conducted in conformity with the following standards: (1) Office: Clean and orderly; adequate medical record-keeping systems under the statute of limitations; * * *." Appellant Bingham claims that he could not have violated this administrative rule because he does not know what "statute of limitations" was involved or was violated.
The reference to the "statute of limitations" in the administrative regulation would indicate the minimum period of time for which records must be maintained, depending upon the applicable purpose. See, e.g., Ohio Asphalt Paving, Inc. v. OhioDept. of Indus. Relations (1992), 63 Ohio St.3d 512, 518. However, we need not address whether Dr. Bingham had adequate notice as to the length of time he was required to retain records because that issue is irrelevant in this case.
The Board did not charge Dr. Bingham with not keeping his records for the requisite amount of time, but rather with not keeping "adequate" medical records. Dr. Bingham's records did not adequately document his treatment of Mandy. Notations for some treatments were missing completely. General references to "inoculations" did not indicate what drugs had been administered. Charges were made without any reference as to what treatment was given to incur the cost. The x-rays did not have any notations as to their clinical significance and were of such poor quality that they were virtually unreadable. Certain other subpoenaed records were considered "questionable" because they did not "appear" until long after they were requested.
Dr. Bingham's records did not contain sufficient information to document his treatment of Mandy. As such, we do not find any error in the trial court's affirmance of the violation of this administrative regulation. The fifth assignment of error is overruled.
 D.
The third assignment of error purports that the Board violated Ohio's "Sunshine Law," R.C. 121.22, when the Board adjourned to executive session to consider the hearing officer's report and recommendation. Dr. Bingham complains that the Board, in its motion for an executive session, failed to state which one of of the approved purposes for which the executive session was to be held. He also contends that the Board discussed issues other than the hearing officer's report and recommendation when it increased the fine from $250 to $1,000, claiming that "[n]o one knows what was discussed or reviewed to justify an increase in the fine."
R.C. 121.22(A) states:
 This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings, unless the subject matter is specifically excepted by law.
Exceptions to the open meeting rule are listed in R.C. 121.22(D) and (E), and R.C. 121.22(G) enumerates further instances where the members of a public body, after a roll call vote, may hold a limited purpose executive session. Section (1), in pertinent part, permits a board to retire to executive decision "[t]o consider the * * * investigation of charges or complaints against a * * * licensee or regulated individual, unless the * * * licensee * * * requests a public hearing."
In July, a public hearing was held on the complaint against Dr. Bingham. In November of 1996, the five doctors of veterinary medicine that comprised the Board met to discuss the report and recommendation issued by the hearing officer. Following a review of this report and recommendation, with opportunities for comments, questions and answers, the Board adjourned to executive session "to discuss and consider the Report and Recommendations of the Hearing Officer, and the information that's been presented." After the Board returned from executive session, a Board member moved to accept the hearing officer's report as presented "with the modification to the civil penalty from $250 to $1,000, based on the fact that this is a subsequent offense."
The Board stated its purpose in retiring to an executive session, which was permissible under the statute to allow the Board to consider and to investigate the charges and complaints against the licensee. See R.C. 122.22(G)(1). See, also, State exrel Barron v. Ohio Motor Vehicle Dealers Bd. (1981), 2 Ohio App.3d 454,458 (Whiteside, J, dissenting) (discussing how the term "investigate" encompasses a multitude of acts "from asking a simple question to a complete trial or adjudicatory hearing);Weyman v. Ohio State Bd. of Pharmacy (May 11, 1988), Hamilton App. No. C-87-0338, unreported, 1988 Ohio App. LEXIS 1791, *8-9 (finding no violation of Sunshine Law where Board deliberated in executive session when there was no specific request within the record that the Board publicly deliberate). The Board did not take any action on Dr. Bingham's sanctions until it returned from executive session, and then publicly moved to adopt the hearing officer's report.
Furthermore, the Board publicly explained that the reason for the increase in the fine over the recommendation was based upon the fact that this was Dr. Bingham's second infraction. See R.C.4741.22. In considering the appropriateness of the sanction, the trial court is limited to determining whether the sanction is within the range of acceptable choices for the particular infraction. Hale v. Ohio State Veterinary Medical Bd. (1988),47 Ohio App.3d 167, 169.
Again, after a review of the record, we do not find any abuse of discretion in the trial court's determination that the Board's actions were in accordance with law and did not violate R.C.122.22. The appellant's third assignment of error is overruled.
 E.
The second assignment of error alleges that Dr. Bingham's right to a fair and impartial hearing was violated because the Board was exposed to evidence during the investigation which was not subject to cross examination. Specifically, Dr. Bingham argues that, prior to holding his adjudicatory hearing, the Board reviewed the investigative reports of its investigator and the complaint by the owner of the dog. Neither the investigator nor the dog's owner testified at the hearing.
We do not find that Dr. Bingham has demonstrated that the Board's role as both investigator and adjudicator in Dr. Bingham's case was a violation of his due process rights. In Withrow v.Larkin (1975), 421 U.S. 35, 43 L.Ed.2d 712, the United States Supreme Court addressed the effect of a board performing a combination of investigative and adjudicative functions:
 The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances."
Id. at 55, 43 L.Ed.2d at 728, quoting United States v. Morgan
(1941), 313 U.S. 409, 421, 85 L.Ed. 1429, 1435. The Supreme Court acknowledged that it was very typical for members of administrative agencies to receive the results of investigations, to approve the filing of charges, and then to participate in the ensuing hearings. Id. at 56, 43 L.Ed.2d at 729. "This mode of procedure does not violate the Administrative Procedure Act, and it does not violate due process of law." Id. See Berezoski v.Ohio State Medical Bd. (1988), 48 Ohio App.3d 231, 239 (hearing examiner's exposure to nonadversary investigative procedure does not in itself show that hearing examiner was impartial); Waspe v.Ohio State Dental Bd. (1985), 27 Ohio App.3d 13, 16 (finding that the board's procedures for investigating and adjudicating a complaint did not violate the due process rights of the licensee).
Chapter 4741 of the Ohio Revised Code governs the Ohio Veterinary Medical Licensing Board. Pursuant to R.C.4741.03(C)(6), the Board is required to enforce R.C. Chapter 4741, and for that purpose, make investigations. The Board may examine witnesses and all documentary evidence in relation to any matter which the Board has authority to investigate. R.C. 4741.03(D)(1). By law, the Board is required to perform both investigative and adjudicative functions with respect to the licensees. The United States Supreme Court has held that this procedure is not a violation of due process of law without an additional showing of bias. See Withrow v. Larkin, supra.
Dr. Bingham has not introduced any evidence that the Board members were unable to act with honesty and integrity in separating their investigative functions from their adjudicative functions. Without evidence to the contrary, Dr. Bingham has failed to overcome the presumption that the Board was unbiased or that his right to a fair and impartial hearing was violated. The second assignment of error is overruled.
 III.
We find no abuse of discretion in the trial court's finding that the administrative board's decision was supported by a preponderance of reliable, probative, and substantial evidence and was in accordance with law. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _________________________________ LYNN C. SLABY
FOR THE COURT
DICKINSON, J.
REECE, J.
CONCUR
[1] The applicable sections of the Revised Code and Administrative Code that Dr. Bingham was charged with violating are:
(1) R.C. 4741.22(A):
 In the conduct of the person's practice does not conform to the rules of the board governing proper, humane, sanitary, and hygienic methods to be used in the care and treatment of animals;
(2) R.C. 4741.22(R):
Is guilty of gross incompetence;
(3) R.C. 4741.22(W):
 Fails to use reasonable care in the administration of drugs, as defined in division (C) of Section 4729.02 of the Revised Code, or acceptable scientific methods in the selection of such drugs or other modalities for treatment of a disease or in conduct of surgery;
(4) Sec. 4741-1-03(C)(1), Ohio Administrative Code:
 Failure to keep the facility in which the practice is conducted in conformity with the following standards:
 Office: clean and orderly; adequate medical recordkeeping systems under the statute of limitations * * *.
[2] The hearing officer had originally recommended a $250 fine. The Board modified the proposed penalty to $1,000 on the basis that Dr. Bingham previously was disciplined by the Board pursuant to a Settlement Agreement dated January 11, 1995, in which Dr. Bingham consented to a thirty-day license suspension, payment of costs, and fifty hours of continuing education. R.C. 4741.22 authorizes the Board to assess fines of $1,000 for subsequent offenses.